UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

DEAN HOWARD MANOR,

       Petitioner,

     -v-                        08-cv-6056(MAT)
                                         **ORDER**

STATE OF NEW YORK,

       Respondent.

─────────────────────────────

## I.   Introduction

*Pro se* petitioner Dean Howard Manor ("petitioner") has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions of one count each of Murder in the Second Degree (N.Y. Penal L. § 125.25(1)), Criminal Possession of a Weapon in the Second Degree (former § 265.03(2)), and two counts of Criminal Possession of a Weapon in the Third Degree (former § 265.02(4), (7)). Petitioner was convicted in Monroe County Supreme Court following a jury trial before Justice David Egan, and was subsequently sentenced to 25 years to life on the murder conviction, consecutive to concurrent terms of 7 and 15 years on the weapons convictions, for a total of 40 years to life.[1] S. 13.[2]

---

[1] This sentence was later modified by the Appellate Division on direct appeal.

[2] Citations to "S.__" refer to the sentencing transcript; citations to "T.__" refer to the trial transcript.

## II. Factual Background and Procedural History

Petitioner's conviction stems from the shooting death of thirteen-year-old LaTesha Parson ("the victim") that took place near an elementary school on Sixth Street in the City of Rochester. The shooting was allegedly a botched drive-by shooting in retaliation for a previous robbery committed against the petitioner.

In the late afternoon on September 12, 2002, the victim was standing on the street with her father, brother, and cousin, when multiple shots were fired from a gold Nissan Maxima. Two bullets struck the victim. James Murray, the victim's cousin, identified the shooter as the petitioner.

Six weeks later, petitioner was in custody for an unrelated offense when he was interviewed by police investigators about the incident. Petitioner denied any knowledge regarding the shooting. Following the interview, petitioner made a telephone call to his friend, Larry Murell ("Murell"), mentioning "something about a gun." That call was monitored and recorded by police at the Monroe County Jail. Three days later, police executed a search warrant of Murell's residence and recovered the weapon that was confirmed to have fired the fatal shots. At trial, Murell testified that petitioner had given him the gun.

The gold Maxima that the witnesses described was recovered by police after it was reported abandoned. Among the items found in

the car were documents bearing the name of petitioner's alias. T. 212-213, 234-239, 240-243, 248, 252, 254-256, 270, 279-282, 293-294, 309-315, 394-399, 401-403, 669, 710-712, 727-735, 743-749, 805-808, 817.

Petitioner presented an alibi defense at trial. Defense counsel intended to call petitioner's aunt, Novella Copeland, as a defense witness to testify that her son admitted to committing the murder, and that she had seen the murder weapon in her home. Copeland's testimony was precluded by the trial court on hearsay grounds. Petitioner did not testify on his own behalf. T. 825-827, 844-877.

Following his conviction, petitioner filed a direct appeal to the Appellate Division, Fourth Department, which modified his sentence and unanimously affirmed the judgment of conviction as modified.[3] People v. Manor, 38 A.D.3d 1257 (4th Dept. 2007); lv. denied, 9 N.Y.3d 847 (2007).

This petition for habeas corpus followed, in which petitioner raises the following grounds for relief: (1) the telephone conversation between petitioner and Murell was not properly authenticated at trial; (2) the court erred in admitting the

---

[3] The Appellate Division modified petitioner's sentence, finding that the second-degree weapons possession arose out of the same transaction as the second-degree murder charge. Petitioner's sentence was thus modified to run 15 years imprisonment concurrent with 25 years to life on the weapons possession (second degree) and the murder conviction, while the conviction for weapons possession (third degree) ran consecutive to those terms, for a total of 32 years to life. See People v. Manor, 38 A.D.3d 1257 (4th Dept. 2007)

records of the telephone calls into evidence; (3) denial of the right to present a defense; (4) the sentences for the weapons possession convictions should have run concurrently to one another; (5) the evidence was legally insufficient to support the conviction; (6) trial counsel was ineffective; and (7) cumulative errors deprived petitioner of a fair trial. Petition ("Pet") at Attach. 8a-8m. (Dkt. #1). The respondent has submitted an answer and memorandum of law opposing the petition (Dkt. #12) and appendix of exhibits ("Appx.").

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A.  General Principles Applicable to Federal Habeas Review

#### 1.  Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U .S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if

the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently ." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial

incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner,</u> 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom. Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

## 2. Exhaustion and Procedural Default

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts". <u>Daye v. Attorney General</u>,

696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984). However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263, n.9 (1989) (other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Id.

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

**B.   Merits of the Petition**

**1.   Evidentiary Errors**

Petitioner asserts that the trial court erred in admitting into evidence a recording of the petitioner's telephone call from jail without it being sufficiently authenticated. Pet. at 8a. He further contends that the records relating to the times, dates, and durations of the telephone calls were also improperly admitted at

trial. Pet. at 8b. The Appellate Division rejected both of these claims on the merits. People v. Manor, 38 A.D.3d 1257 (4th Dept. 2007).

Charles Facteau ("Facteau"), the inmate phone service manager for EverCom Services Inc.[4] at the Monroe County Jail, testified regarding the telephone system in place at the jail. He explained that all calls that are made from the jail are monitored, and that all phone numbers dialed or phone calls made are logged in a written and recorded format. He further testified that inmates are given written and telephonic notice that the calls are monitored, as does the recipient of the phone call after the party has accepted the call.

Facteau was asked to retrieve records relating to certain numbers dialed from the jail, alleged to have been dialed by the petitioner. From those numbers, Facteau generated a printed report showing the phone from which the call was placed, what day and time the call was placed, and the duration of the call. Those records were introduced as business records at trial.

Also introduced were recordings of petitioner's conversations from jail. One such recording contained a conversation regarding a gun, which led to a search wherein the gun was discovered and determined to have been involved in the fatal shooting. Other recordings were introduced as evidence of consciousness of guilt.

---

[4] EverCom is contracted by the Monroe County Jail to provide collect calling services for inmates.

The voice on the recordings was authenticated as belonging to petitioner by a Rochester Police investigator, who testified that he was familiar with the petitioner's voice from prior conversations with him. T. 727-747, 756-802.

Petitioner's first claim, that the recordings were not properly authenticated, does not present a cognizable claim for habeas corpus review. A petitioner for habeas corpus is limited by 28 U.S.C. § 2254 to raising claims implicating the Constitution or laws or treaties of the United States. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Petitioner did not frame his argument in federal, constitutional terms but rather relied on state law to support his arguments on direct appeal. He has therefore failed to properly exhaust his claims relating to the jailhouse recordings.

To satisfy the exhaustion requirement, a habeas petitioner must have afforded the state courts a fair opportunity to consider his federal claim. Picard v. Connor, 404 U.S. 270 (1971). In other words, he must present essentially the same factual allegations and legal doctrines to the state court and federal court. Daye, 696 F.2d at 191. The manner in which a state defendant may fairly present the constitutional nature of his claim includes reliance on pertinent federal cases employing constitutional analysis, reliance on state cases employing constitutional analysis in like fact situations,

assertion of the claims in terms so particular as to call to mind a specific right protected by the Constitution, and an allegation of a pattern of facts that is well within the mainstream of constitutional litigation. Id. at 194.

Although petitioner has raised the same factual allegations here as he did on appeal, he did not apprise the state appellate courts of the constitutional nature of his claim. Rather, the argument advanced by petitioner was neither phrased in constitutional terms, nor within the mainstream of constitutional litigation. See Daye, 696 F.2d at 193 (claim that a hearsay statement was improperly admitted would not present a constitutional claim to state court). Petitioner has filed one direct appeal to the Appellate Division and has been denied leave to appeal to the New York Court of Appeals. He may no longer file another direct appeal. See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001); N.Y. Court Rules § 500.20. Although petitioner may still seek collateral review in state court, under New York law he may not seek collateral review of any claims he could have, but did not raise on direct appeal. See Aparicio, 269 F.3d. at 91 (citing N.Y. Crim. Proc. L. § 440.10(2)(c)).

Because the petitioner no longer has a forum available in state court in which to raise his unexhausted claim, the Court deems the claim exhausted but procedurally barred. Petitioner makes no showing of the requisite cause and prejudice necessary to overcome the

procedural default, nor has he demonstrated that this Court's failure to consider the claim would result in a miscarriage of justice. See Wainwright, 433 U.S. at 87-91. Accordingly, this aspect of petitioner's claim is dismissed.

In a related ground, petitioner contends that the printed report containing times, dates, and durations of the telephone calls were improperly admitted at trial. Although petitioner raised this claim in his direct appeal, he did not seek further review of that issue in his leave letter to the New York Court of Appeals. See Appx. G.

As stated earlier, a federal court may only examine a petition for writ of habeas corpus if it appears that the petitioner has first exhausted his remedies in state court. 28 U.S.C. § 2254(b)(1)(A). This is accomplished by invoking one complete round of the state's established review process. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). Typically, this means that the claims in the petition must have been included in both petitioner's direct appeal and in an application for discretionary review to the state's highest court. O'Sullivan, 526 U.S. at 848. Here, petitioner has not "fairly presented" his claims to the state's highest court for exhaustion purposes, see Picard, 404 U.S. at 275, and this claim too is unexhausted but procedurally barred from habeas review. See Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991); N.Y. Crim. Proc. L. § 440.10(2)(a)(barring collateral review of claims that were

previously determined on the merits on direct appeal). Because petitioner has not alleged cause for the procedural default and prejudice resulting therefrom, nor has he alleged that he is actually innocent, this claim is dismissed as procedurally barred.

## 2. Right to Present a Defense

Petitioner next argues that he was denied his right to call witnesses and present a defense because the trial court refused to admit testimony from petitioner's aunt, Ms. Novella Copeland ("Copeland"). Copeland allegedly would have testified that she had told an investigator from the District Attorney's office that her son admitted to committing the murder that petitioner was charged with. Pet. at 8d. Copeland's son, who allegedly admitted his involvement in the shooting, was murdered in May of 2003. T. 825-829. The Appellate Division found that the trial court had properly refused to allow Copeland to testify, because there was "insufficient evidence to assure the trustworthiness and reliability of the declaration to warrant its admission . . . ." Manor, 38 A.D.3d at 1257.

Petitioner did not include this claim in his request for leave to appeal letter to the New York Court of Appeals, however, and thus failed to properly exhaust his state court remedies. See Appx. G. Because petitioner did not fairly present his claim to the state's highest court, the claim is procedurally barred. Grey, 933 F.2d at 121. Because petitioner's claim was raised and adjudicated on the

merits on direct appeal, he is procedurally barred from raising the claim in a motion for *vacatur*. <u>See</u> N.Y. Crim. Proc. L. § 440.10(2)(a). Because petitioner no longer has a state court forum in which to argue his constitutional claim, it is deemed exhausted but procedurally barred. Again, petitioner has not alleged cause and prejudice to overcome the procedural default. He has also not alleged that he is actually innocent so as to warrant review under the "miscarriage of justice" exception. Accordingly, this claim is dismissed.

### 3. Sentencing Claim

Petitioner contends that the trial court erred in imposing consecutive sentences for the third-degree weapons possession and second-degree murder. Pet. at 8e. On direct appeal, petitioner argued that because the crime of criminal possession of a weapon in the second degree and the crime of murder in the second degree arose out of a single act, the sentences for the respective convictions should have run concurrently. The Appellate Division agreed, modifying petitioner's sentence, but further held that "the sentences imposed for criminal possession of a weapon in the third degree, which crimes were completed prior to the shooting, may run consecutively to the sentence imposed for murder in the second degree." <u>Manor</u>, 38 A.D.3d at 1258 (citations omitted).

The respondent has correctly argued that petitioner's claim that the trial court unlawfully imposed consecutive sentences is not

cognizable on habeas review. <u>Bethune v. Superintendent, Bare Hill</u> <u>Correctional Facility</u>, 299 F.Supp.2d 162 (W.D.N.Y. 2004); <u>Charles</u> <u>v. Fischer</u>, 516 F.Supp.2d 210 (E.D.N.Y. 2007) (collecting cases). To the extent that petitioner seeks to argue for the first time that there was insufficient evidence to convict him of third-degree weapons possession, <u>see</u> Pet. at 8f, such a claim is unexhausted, subject to a procedural bar, and thus not reviewable by this Court. <u>See</u> Grey, 933 F.2d at 119-120 ; N.Y. Crim. Proc. Law § 440.10(2)(c)(the court must deny a motion to vacate "where no appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal.")

This claim is therefore dismissed.

### 4.    Sufficiency of the Evidence

Petitioner next avers that petitioner's conviction of intentional murder was not supported by sufficient evidence because his conduct amounted to depraved indifference. Pet. at 8f. The Fourth Department denied petitioner's claim on the merits. <u>Manor</u>, 38 A.D.3d at 1258.

When a petitioner for habeas corpus challenges the sufficiency of the evidence presented at trial, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u> <u>v. Virginia</u>, 443 U.S. 307, 319 (1979).

A person is guilty of second-degree (intentional) murder when, "[W]ith intent to cause the death of another person, he causes the death of such person or of a third person[.]" N.Y. Penal L. § 125.25(1). The "of a third person" phrase allows a defendant to be convicted of intentional murder under a "transferred intent" theory, the theory upon which the prosecution relied to prove petitioner's guilt in the shooting of the victim. See People v. Fernandez, 88 N.Y.2d 777 (1996) (in second-degree murder prosecution where the resulting death is of a third person who was not the defendant's intended victim, the defendant's intent to kill the intended victim is said to be "transferred" to the actual victim to establish all of the elements of the completed crime of intentional murder.)

The proof at trial established that the victim and three family members were gathered on a sidewalk near an elementary school on Sixth Street in the City of Rochester when a gold Nissan Maxima pulled up and began firing shots. T. 236-237, 260-261, 266, 277-281, 310-312. All four began to run. As the victim ran, she was shot once in the leg and once in the head, causing her death. T. 238, 262, 265. The surviving witnesses testified to observing a black male shooting from a gold Nissan Maxima. T. 238-241, 248-252, 262-265, 280, 282, 293, 298. James Murray, the victim's cousin, recognized the shooter as petitioner, whom Murray had known from several years prior. T. 317-318, 340. The petitioner had also been seen driving

the gold Nissan Maxima in the weeks preceding the shooting. T. 318-319, 548-549, 637-638, 857-858. Petitioner's uncle admitted at trial that he was the registered owner of the gold Maxima, and that he regularly permitted petitioner to use the vehicle. T. 471-472, 476-477.

Petitioner's friend Larry Murell ("Murell") testified that after the shooting, petitioner gave him a bag to hold onto that contained a gun. T. 553-557. Following petitioner's arrest, petitioner called Murrell from jail, telling him that he was being investigated for the shooting. Petitioner asked if Murrell still had the "ratchet".[5] As a result of that conversation, police secured a search warrant for Murrell's house and recovered a gun. T. 609-611, 616. The bullet recovered from the victim's body and the casings found at the scene of the shooting were found to have been fired from the weapon recovered from Murell's house. T. 710-711.

In sum, the above-described evidence was sufficient for the jury to determine that petitioner was the individual who fired the shots that killed the victim. It is reasonable to conclude that firing multiple gunshots from an assault weapon into a cluster of people gathered on the street is likely to result in the death of at least one of those individuals. The record thus readily supports the jury's finding that petitioner intended to kill someone when he fired at the group. The Appellate Division therefore did not run

---

[5] According to Murell's testimony, "ratchet" is slang for gun.

afoul of the holding of <u>Jackson v. Virginia</u> in finding that petitioner's conviction was supported by legally sufficient evidence.

### 5.   Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was ineffective for failing to request that the court instruct the jury on the lesser-included offense of second-degree (reckless) manslaughter. Pet. at 81. The Appellate Division held that petitioner was not denied the effective assistance of counsel. <u>Manor</u>, 38 A.D.3d at 1258.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." <u>Id.</u> To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of

the particular case, viewed as of the time of counsel's conduct,"
id., and may not second-guess defense counsel's strategy.  Id. at
690.

Petitioner cannot show that his attorney's tactical decision
not to request that the trial court charge the jury on second-degree
manslaughter was objectively unreasonable in light of all the
circumstances. Strickland, 466 U.S.  at 690.  "A decision to forgo
a charge on lesser included offenses is strategic in nature." Lake
v. Portuondo, 14 Fed.Appx. 126 (2d Cir. 2001). Thus, even if it
would have been proper as a matter of state law for the trial court
to charge the lesser offense, see N.Y. Crim. Proc. L. § 300.50, "the
failure of petitioner's counsel to [request the trial court to] do
so in this case amounted to a tactical choice not rising to the
level of ineffective assistance of counsel[,]" for "[a] failure to
request charges on all possible lesser included offenses may be
proper trial strategy." Colon v. Smith, 723 F.Supp. 1003, 1008
(S.D.N.Y. 1989).  Allowing the jury to deliberate on lesser included
offenses "may give the jury a basis for finding a defendant guilty
of a crime where the prosecution was unable to prove the elements
of the original crime charged beyond a reasonable doubt." Colon, 723
F.Supp. at 1008. Accordingly, I find that defense counsel, having
vigorously pursued an alibi defense at petitioner's trial, was not
objectively unreasonable in seeking to avoid this possibility.  See
id.  A defense which denies guilt is "a strategy that 'practically

precludes a request for an instruction on a lesser included offense.'" <u>Yu v. United States</u>, No. 97 Civ. 2736, 1997 WL 423070 at *3 (S.D.N.Y. July 29, 1997) (quoting <u>Rios v. United States</u>, No. CV-91-4384, 1992 WL 328931, at *6 (E.D.N.Y. Oct. 13, 1992)). "The strategy of pursuing a completely exculpatory defense instead of a partially exculpatory defense is one of the many decisions made by trial counsel which are entitled to substantial deference." <u>Gibbs v. Donnelly</u>, 673 F.Supp.2d 121, 143 (W.D.N.Y., 2009) (citing <u>United States v. Di Tommaso</u>, 817 F.2d 201, 215 (2d Cir. 1987)).

Because petitioner has not established that his attorney's conduct was objectively unreasonable, the Court need not examine whether petitioner suffered prejudice. <u>See, e.g.</u>, <u>Greiner v. Wells</u>, 417 F.3d 305, 319 (2d Cir. 2005) ("'[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.' " (alterations in original) (quoting <u>Strickland</u>, 466 U.S. at 697)).

As such, the Appellate Division's decision was neither contrary to nor an unreasonable application of <u>Strickland v. Washington</u>, and habeas relief is denied on this ground.

### 6. Cumulative Error

In his last ground for habeas relief, petitioner contends that cumulative trial errors deprived petitioner of a fair trial. In particular, petitioner alleges that the trial court: (1) prematurely instructed the jury in violation of N.Y. Crim. Proc. L. § 260.30;

and (2) erred in using a verdict sheet that was annotated and thus, improper. Pet. at 8m, Appx. E at 23-28. Although framed as a constitutional violation, petitioner essentially seeks to re-litigate the same alleged errors of state law as he did on appeal. The Appellate Division specifically rejected his arguments, stating that the trial court "did not err in charging the jury or in composing the verdict sheet." Manor, 38 A.D.3d at 1258.

Petitioner's claim that the trial court's limiting instructions to the jury regarding the recordings and transcripts of the phone calls amounted to premature jury charging is without merit. It is well within the trial court's discretion to allow the use of transcripts to aid the jury in understanding recorded conversations. See People v Feld, 305 N.Y. 322, 331-332 (1953); People v. Kuss, 81 A.D.2d 427 (4th Dept. 1981). Moreover, trial courts should give specific instructions to the jury at the time the recordings are played. See Kuss, 81 A.D.2d at 430 (finding no error where the trial court instructed that the transcripts were only an aid and that, if the jury detected a discrepancy between the tapes and the transcripts, it should rely upon the tapes); see T. 778-779.

Similarly, petitioner's argument that the court used the improper verdict sheet also fails. Under New York state law, it is reversible error for a trial court to give the jury a verdict sheet that, in addition to listing the counts, also lists the statutory elements of the counts. See People v. Taylor, 76 N.Y.2d 873 (1993). Petitioner contends that the verdict sheet improperly documented the

five counts of the indictment, the statutory definitions, and "a concise explanation of each count." There is no evidence that the verdict sheet used was incorrect. T. 1061-1062. Moreover, the parties agreed to use the subject verdict sheet. T. 1065.

With respect to both contentions, petitioner has not set forth an error of state law, let alone an error of a constitutional dimension. See, e.g., Folger v. Conway, 443 F.Supp.2d 438, 452 (W.D.N.Y. 2006). Accordingly, this claim is dismissed.

## IV. Conclusion

For the reasons stated above, Dean Manor's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED**.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:      July 2, 2010
            Rochester, New Yor